UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOVECTOR CORPORATION,<br><br>   Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO. LTD., et al.,<br><br>   Defendants. | Case No. 16-cv-02463-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART**<br><br>Dkt. No. 14 |

## INTRODUCTION

At its core, this case is about the ownership of augmented reality technology. Plaintiff GeoVector Corporation ("GeoVector") asserts that Samsung's Galaxy smart phones and tablets infringe several of GeoVector's patents in the augmented reality field, and so it has filed suit against defendants Samsung International, Inc. ("SII"), Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), Samsung Telecommunications America, LLC ("STA"), and Samsung Research America, Inc., ("SRA"), (collectively "Samsung"). First Amended Complaint ("FAC") ¶¶ 65-66. Samsung has not moved to dismiss the patent infringement claims. But GeoVector also contends that that Samsung misappropriated its trade secrets and confidential information, *id.* ¶ 123, appropriated GeoVector's augmented reality invention and represented that it was Samsung's own innovation, *id.* ¶¶ 132-133, and engaged in racketeering behavior by inducing GeoVector to disclose the details of its augmented reality technology for the purposes of stealing and appropriating it, *id* ¶ 160. Samsung moves to dismiss those claims. I heard oral argument on October 19, 2016.

Samsung's motion is GRANTED with leave to amend. The statute of limitations has run on the misappropriation claim; GeoVector's intellectual property is not the proper subject of a Lanham Act claim; GeoVector has failed to meet RICO's distinctness requirement; declaratory

1  relief is neither available nor necessary in a patent infringement action; and, STA is a defunct
2  entity merged into SEA.

## BACKGROUND

GeoVector is a California corporation founded in 1987 by inventor and computer scientist John Ellenby, later joined by his sons Thomas and Peter Ellenby. FAC ¶ 25. In 1990, John, Thomas, and Peter Ellenby conceptualized an augmented reality device that "utilized data as to the device's position and orientation to display relevant information to the user" and which they believed had applications for navigation, video gaming, tourism, and advertising. *Id.* ¶¶ 27-28. Between 1993 and 2007, GeoVector applied for, and was awarded, 17 patents for augmented reality technologies. *Id.* ¶ 33. In 1998, GeoVector created the Little Guy prototype – "a hand-held pointing device that would use the same basic technology covered by the previously issued patents, but instead of viewing a super-imposed image, it would provide the user with relevant information about whatever location it was pointed at." *Id.* ¶¶ 45-46.

In December 2002, GeoVector met with Samsung for the first time and produced a confidential slide deck proposing that GeoVector technology could be incorporated into Samsung's handsets. *Id.* ¶ 56. The parties met a second time on July 19, 2006, in San Francisco, to discuss the possibility of integrating GeoVector technologies into Samsung's mobile devices. *Id.* ¶ 57. In August, 2006 GeoVector sent a confidential briefing to Samsung and on August 16, 2006, met with Samsung at its Headquarters in Seoul, South Korea, and produced a confidential set of slides detailing how "GeoVector enabled devices make existing location based contents more accessible through pointing as well as create a whole new genre of pointing enabled applications (with patent technology)." *Id.* ¶¶ 58-59. GeoVector and STA entered into a mutual nondisclosure agreement on February 12, 2008. *Id.* ¶ 62.

GeoVector sent Samsung three different licensing and partnership proposals, the first on August 23, 2006, the second in September 2006, and a final proposal on April 8, 2008. *Id.* ¶¶ 60-63. Samsung did not accept any of GeoVector's proposals and never reached any licensing or partnership agreement with GeoVector. *Id.* ¶ 64.

Between 2009 and 2013, Samsung sold smartphones and tablets that GeoVector alleges

infringe its patent-in-suit and incorporate GeoVector's trade secrets and augmented reality technologies. *Id.* ¶ 65. GeoVector sent notice letters to Samsung on April 16, 2013 and demand letters on April 29, 2013 "notifying them of infringement with proof of infringement claim charts, detailing each infringement." *Id.* ¶¶ 75-76. GeoVector filed this lawsuit on May 5, 2016.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under FRCP 9(b), to state a claim for fraud, a party must plead with particularity the circumstances constituting the fraud, and the allegations must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (citation omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. *Vess v. Ciba-*

3

*Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

### I.    MISAPPROPRIATION CLAIM

Samsung moves to dismiss GeoVector's misappropriation claim because (1) the claim is barred by the statute of limitations and (2) GeoVector has failed to allege sufficient facts to establish a "trade secret." Mot. at 17. Because I conclude that the statute of limitations bars this claim, I do not address Samsung's second argument.

A California Uniform Trade Secrets Act ("CUTSA") claim for misappropriation "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." Cal Civ. Code § 3426.6.

GeoVector alleges that Samsung misappropriated its confidential information and trade secrets, which Samsung obtained through confidential meetings with GeoVector between 2000 and 2008, "to create its own competing products using GeoVector's augmented reality and pointing search technologies." FAC ¶ 123. It contends that Samsung began selling technology incorporating its confidential trade secrets in 2009. *Id.* ¶¶ 65-66. It notes that on April 16, 2013, it began sending notice and demand letters to Samsung asserting that Samsung's products infringed GeoVector's patented augmented reality technology. *Id.* ¶¶ 75-76.

Samsung contends that the statute of limitations has run on GeoVector's CUTSA claim because it "(1) knew or should have known of Defendants' alleged incorporation of [the] allegedly confidential information into their patents and products by 2009, and (2) had actual knowledge no

4

later than April 2013." Mot. at 18. GeoVector does not dispute these facts but argues that the statute of limitations was tolled because Samsung "lulled and continued to lull Plaintiff into the view that they would eventually obtain appropriate assignments, licenses, or other permission or authorizations from Plaintiff." FAC ¶ 125.

The doctrine of equitable estoppel applies to toll a statute of limitations when "a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990). Equitable estoppel is not appropriate if the party claiming estoppel fails to establish that their reliance was "reasonable." *Id.*

In its opposition, GeoVector contends that Samsung lulled it into not filing suit by falsely leading it to believe that Samsung would enter a commercial relationship with GeoVector. Opposition ("Oppo.") at 6 (Dkt. No. 26). However, it cites only the negotiations between GeoVector and Samsung that took place between 2002 and 2008 as evidence of this misleading behavior. FAC ¶¶ 55-64. It has not alleged that Samsung made any representations after 2008 or otherwise gave GeoVector reason to believe it intended to license GeoVector's technology. Since GeoVector did not file its case until May 5, 2016, for its claim to survive under the doctrine of equitable estoppel it must be able to successfully argue that it reasonably relied on Samsung's 2008 representations up until May 5, 2013, three years before it filed suit. GeoVector has failed to make this case.

GeoVector does not specify when or why it stopped relying on Samsung's representations about a licensing agreement, noting only in its opposition that "GeoVector only recently learned the falsity of these representations and promptly brought this action." Oppo. at 6. At oral argument, counsel for GeoVector explained that GeoVector did not realize Samsung had misappropriated its trade secrets until one of Samsung's augmented reality patents, referencing GeoVector's patents as prior art, was published. But this fact is not alleged in its complaint, and GeoVector has still failed to explain why its behavior was reasonable, as required for equitable tolling to apply. As written, GeoVector's complaint indicates that GeoVector should have realized that Samsung had no intention of licensing GeoVector's technology and instead consistently

5

behaved as though the augmented reality technology was its own starting in 2009 by (1) selling numerous products containing augmented reality features; (2) filing patent applications and obtaining patents for augmented reality technology; and (3) continuing these activities, even in the face of GeoVector's notice and demand letters regarding infringement. FAC ¶¶ 65, 75-77, 84. In the face of this conduct, and with no representations from Samsung during this time regarding a potential agreement, it was not reasonable for GeoVector to continue to rely on Samsung's representations from 2008.

Further, GeoVector's allegations indicate that it doubted Samsung would enter an agreement by at least April 2013, because it sent notice and demand letters to Samsung alerting them to their infringement of GeoVector's technologies. *Id.* ¶¶ 75-76. It is doubtful that GeoVector would have sent these demand letters to Samsung if it still believed that Samsung intended to enter a licensing agreement. GeoVector does not allege that Samsung acknowledged or responded to these letters, attempted to dissuade GeoVector from bringing a lawsuit, or, after receiving these letters, attempted to assure GeoVector that it still intended to reach an agreement. GeoVector does not explain why it nevertheless waited more than three years, after sending the letters, to initiate this lawsuit. GeoVector has failed to allege facts demonstrating that it reasonably relied on Samsung's representations up until "recently" to justify applying equitable estoppel to its CUTSA claim. As pleaded, this claim is barred by the statute of limitations.

## II.   LANHAM ACT CLAIM

Samsung moves to dismiss the Lanham Act claim on the grounds that (1) the Lanham Act does not prohibit copying of ideas; and (2) GeoVector's claims are barred by the statute of limitations.

The Lanham Act created "a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.' " *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). GeoVector alleges that Samsung violated the Lanham Act because "Samsung, without attribution and without a license or any other permission, made a bodily appropriation of GeoVector's augmented reality invention and wrongfully claimed that Samsung itself had

6

originated that invention. As a result, Samsung mis-designated the origin of the augmented reality inventions because GeoVector, and not Samsung, originated those inventions." FAC ¶ 132 (internal citation omitted).

GeoVector's Lanham Act claim is based on Samsung's alleged appropriation of GeoVector's augmented reality ideas to create and sell its own augmented reality technology. But the Lanham Act does not prohibit conduct of this kind; it applies only to the appropriation of tangible goods, not intellectual property. *Dastar*, 539 U.S. at 37. In *Dastar*, the Court considered whether the Lanham Act "prevents the unaccredited copying of a work" and specifically, whether the phrase "origin of goods" in the Act could connote "the person or entity that originated the ideas that 'goods' embody or contain." 539 U.S. at 25, 32. It concluded that "the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court noted that "[t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.*

GeoVector's Lanham Act claim is precisely the type the *Dastar* court rejected. Because GeoVector alleges only that Samsung appropriated its ideas and innovations, and not its tangible goods, it has failed to state a valid Latham Act claim.

### III. RICO ACT CLAIM

Samsung moves to dismiss the RICO claim on three bases: (1) GeoVector has failed to allege a distinct RICO enterprise and person and has not alleged RICO conduct; (2) it has failed to allege a pattern of racketeering activity; and (3) its RICO claim is barred by the statute of limitations. Because I conclude that GeoVector has failed to meet RICO's distinctness requirement, I do not address Samsung's other arguments.

#### A. Distinctive enterprise and person

Samsung argues that GeoVector's RICO claim must be dismissed because it has failed to plead a distinct RICO enterprise and person. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd.*

7

*v. King*, 533 U.S. 158, 161 (2001).

GeoVector alleges that the Samsung defendants, together, form a RICO enterprise, while each defendant, individually, is a RICO person. With regards to the RICO enterprise, GeoVector alleges that "[t]he Samsung Defendants, and each of them, are a RICO enterprise based out of Korea and operating in the United States and around the world, because they form a cohesive organization engaged in a pattern of criminal conduct with a myriad of legal entities." FAC ¶ 156. With regards to the RICO person, GeoVector alleges "[d]efendants, and each of them, have wrongfully and unlawfully been employed by, or associated with, an enterprise engaged in . . . a pattern of racketeering activity." *Id.* ¶ 153. These allegations are insufficient to meet RICO's distinctness requirement.

A plaintiff cannot meet RICO's distinctness requirement by alleging that a RICO enterprise is comprised of entities within a corporate family and that those individual corporate entities are the RICO persons. *Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009) (theory that "an enterprise existed between Target Corporation and its wholly-owned subsidiaries fails to meet the distinctiveness requirement of civil RICO claims"); *Ice Cream Distribs. Of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-cv-5815-CW, 2010 WL 3619884, *5 ("a § 1962(c) claim could not be based on a RICO enterprise comprised of a corporation, a wholly-owned subsidiary and an employee of that corporate family if these entities were also plead as the RICO persons"); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 922 (C.D. Cal. 2011) (plaintiffs failed to state a RICO claim where they alleged that "the corporate family of Toyota Defendants constitute both the 'person' and the 'enterprise' for the purpose of RICO"). As the court noted in *In re Toyota Motor Corp.*, this outcome "comports with the purpose of RICO" which "seeks 'to prevent a person from using a corporation for criminal purposes . . . the person and the tool[] are different entities, not the same.'" 785 F. Supp. 2d at 922 (quoting *Cedric Kushner Promotions*, 533 U.S. at 162). Where plaintiffs "allege that the person and the tool are the same entities . . . Plaintiffs have not met the distinctness requirement." *Id.*

GeoVector contends, in opposition, that multiple corporations can form a RICO enterprise. Oppo. at 18. It cites *United States v. Kirk*, 844 F.2d 660, 664 (9th Cir. 1988), in which the Ninth

1    Circuit concluded that evidence of "several lawful entities existing separately from the
2    racketeering activities" was sufficient to demonstrate the existence of a RICO enterprise. But this
3    argument and case do not address the distinctness issue that Samsung has identified. In *Kirk*, there
4    was a clear distinction between the RICO person, who was the individual defendant Kirk, and the
5    RICO enterprise, which was made up of the corporate entities identified. *Id.* There are no
6    comparable facts here as GeoVector has alleged that the Samsung entities both form the RICO
7    enterprise and are RICO persons and has not identified another distinct RICO person. This fails to
8    meet RICO's distinctness requirement. GeoVector has failed to state a claim under § 1962(c).

## IV. DECLARATORY RELIEF CLAIM

GeoVector brings a claim for declaratory relief and requests that this court (1) "declare that U.S. Patent Nos. '138, '536 and '936, and each of them, are valid and enforceable" and (2) "declare that Samsung has never been granted any license under any of the patents validly issued to, and properly and exclusively owned by GeoVector." FAC ¶ 145-146.

GeoVector's first request is improper because "a declaratory judgment of patent validity . . . is not a viable cause of action." *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1370 (Fed. Cir. 2013). As Judge Grewel explained in *XimpleWare, Inc., v. Versata Software, Inc.*, a patent holder does not have an affirmative right to affirm the validity of a patent as "[p]atents are presumed valid under 35 U.S.C. § 282." No. 13-cv-05161-PSG, 2014 WL 6687219, *9 (N.D. Cal. Nov. 25, 2014).

Just as in *XimpleWare,* GeoVector has failed to meet the statutory requirements for a declaratory judgment because it has not identified an "actual controversy" that existed at the time it filed its complaint. In its opposition, GeoVector argues that there is an actual controversy between the parties because "Samsung refuses to accept the validity of GeoVector's patents." Oppo. at 12. But Samsung's purported refusal to accept the validity of GeoVector's patents is not an "actual controversy" within the meaning of Article III – GeoVector already has the right to enforce its patents under patent law and Samsung's attitude toward its patents is not otherwise

actionable. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012).[1]

## V. STA DEFENDANT

Samsung moves to dismiss defendant STA because that entity no longer exists and defendant SEA is its successor in liability. GeoVector objects to this dismissal, arguing that Samsung has not adequately demonstrated that SEA will be liable for STA. Oppo. at 19. It notes that STA was dissolved shortly after Apple Inc. sued Samsung for patent infringement and that Samsung has offered no explanation or business justification for the dissolution. It hypothesizes that Samsung is attempting to avoid liability through corporate restructuring. *Id.* at 19-20. GeoVector also argues that, under Delaware law, a dissolved corporation may be sued for three years following dissolution, and that its lawsuit against STA is valid because it was brought well within this three year period. Oppo. at 18.

GeoVector relies on section 278 of the Delaware Code, which addresses the continuation of a dissolved corporation for purposes of suit and winding up. 8 Del. C. § 278 (2016). However, STA was not dissolved – it is defunct because it merged into SEA. Mot. at 4. Section 259, which addresses the status, rights, and liabilities of constituent and surviving corporations following merger, better addresses the facts here. 8 Del. C. § 259 (2016). This section explains that once a constituent corporation has merged with a surviving corporation, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." *Id.* This section confirms, as Samsung has represented, that SEA is the successor in liability for claims against STA and is the proper party to defend claims against STA.

---

[1] In defense of its claims for declaratory relief, GeoVector attempts to distinguish *XimpleWare* by arguing that (1) in *XimpleWare* declaratory relief was only sought with regards to patent validity, whereas here GeoVector seeks declaratory relief on several issues; and (2) in *XimpleWare* the defendants expressly stated they were not challenging the validity of the patents whereas here Samsung has not said it will not challenge validity. Oppo. at 13. These arguments misstate and mischaracterize the facts of *XimpleWare*, where plaintiffs sought declaratory relief on three separate issues, not just validity, and defendants did challenge the validity of the patents. *XimpleWare*, 2014 WL 6687219 at *9; Reply at 15. I would have assumed that GeoVector's counsel knew this, since he also represented the plaintiff in *XimpleWare*.

1    Although GeoVector argues that Samsung has merged STA and SEA in an attempt to
2    avoid liability, and notes that this merger occurred shortly after Apple Inc. sued Samsung, it has
3    not alleged any facts that indicate that this restructuring has allowed Samsung to avoid legal
4    liabilities or has prevented any plaintiffs from collecting on judgments.  Further, while GeoVector
5    is unsatisfied with Samsung's representations on this point, Delaware law is clear that SEA, as the
6    surviving corporation of the SEA-STA merger, is the successor in liability for all claims against
7    STA.  Because SEA is STA's successor in liability, it is the proper party to defend claims against
8    STA.  Defendant STA is dismissed.

## CONCLUSION

For the reasons outlined above, Samsung's motion to dismiss the misappropriation, Lanham Act, RICO and declaratory relief claims, as well as defendant STA, is GRANTED. GeoVector will have 20 days leave to amend.

**IT IS SO ORDERED**.

Dated: November 10, 2016

WILLIAM H. ORRICK
United States District Judge