1   Jack Russo (Cal. Bar No. 96068)
    Christopher Sargent (Cal. Bar No. 246285)
2   COMPUTERLAW GROUP LLP
    401 Florence Street
3   Palo Alto, CA 94301
    (650) 327-9800
4   (650) 618-1863 fax
    jrusso@computerlaw.com
5   csargent@computerlaw.com

6   Attorneys for Plaintiff
    GEOVECTOR CORPORATION

7

8               UNITED STATED DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  GEOVECTOR CORPORATION, a California          Case No. 4:16-CV-02463-WHO
    corporation,
12                        Plaintiff;             PLAINTIFF'S OPPOSITION TO DEFENDANTS'
                                                 MOTION TO STRIKE INFRINGEMENT
13            v.                                 CONTENTIONS, COMPEL SUPPLEMENTATION
                                                 OF PATENT LOCAL RULE 3-2 DOCUMENT
14  SAMSUNG INTERNATIONAL, INC., a New           PRODUCTION, AND STAY DISCOVERY
    Jersey corporation;
15  SAMSUNG ELECTRONICS CO., LTD., a                 Date:      January 11, 2017
    Korean corporation;                              Time:      2:00 p.m.
16  SAMSUNG ELECTRONICS AMERICA, INC., a         Presiding:     Hon. William H. Orrick
    New York corporation;                        Courtroom:     2, 17th Floor
17  SAMSUNG RESEARCH AMERICA, INC. a
    California corporation;
18
                       Defendants.
19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1

## TABLE OF CONTENTS

2  Table of Contents ........................................................................................................... i

3  Table of Authorities...................................................................................................... iii

4  Introduction................................................................................................................... 1

5  Statement of Facts ........................................................................................................ 1

6  Procedural History ....................................................................................................... 3

7  Legal Standard ............................................................................................................. 9

8  Argument ..................................................................................................................... 9

9  I.     GeoVector has Reasonably Identified the Accused Instrumentalities............................... 9

10 II.    Because GeoVector Charted Dozens of Infringing Instrumentalities, and Because

11        Samsung is Fully On Notice, Additional Charts are Not Required. ................................ 13

12 III.   Absent Further Disclosures and Cooperation From Samsung, There  Is No Basis to

13        Require More Detail; None is Required to Give Notice.................................................... 15

14 IV.    GeoVector Provided a Sufficient Sample of Accused Devices........................................ 16

15 V.     The Contention Process is Not Appropriate For Asserting Defense Arguments and the

16        Infringement Contentions Provided  Reasonable Notice of Indirect Infringement;

17        Samsung Admits to The Same. ...................................................................................... 17

18 VI.    When Samsung Provides Further Information, GeoVector will  Further Clarify Its

19        Doctrine of Equivalents Contentions, if Necessary. ....................................................... 17

20 VII.   GeoVector Has Produced All Required Documents. ...................................................... 17

21        A.     GeoVector Has Met Its Obligation to Produce Documents  Regarding Pre-Patent

22               Application Discussions Under P.R. 3-2(a). ......................................................... 18

23        B.     GeoVector Produced All Documents Regarding the Reduction  To Practice of its

24               Inventions Under Patent Local Rule 3-2(b). ......................................................... 18

25        C.     GeoVector Has Produced the File Histories and Ownership Documents. ........... 18

26        D.     GeoVector has Produced Documents

27               Showing the Operation of Instrumentalities. ......................................................... 18

28 VIII.  Samsung Is Fully able to Prepare and Supply Invalidity Contentions............................. 19

1

Conclusion ..................................................................................................................... 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1

<u>TABLE OF AUTHORITIES</u>

2

**Statutes**

3

35 U.S.C. § 112(6) ................................................................................................ 13

4

**Cases**

5

Adobe v. Wowza, 2014 U.S. Dist. LEXIS 23153 (N.D. Cal. February 22, 2014).................... 10

6

Bender v. Freescale Semiconductor, Inc., 09-cv-01156 PHJ (MEJ),

7

2010 U.S. Dist. LEXIS 91281, 2010 WL 1689465 (N.D. Cal. April 25, 2010) ....................... 15

8

CAP Co. v. McAfee, Inc., 2015 U.S. Dist. LEXIS 104697 (N.D. Cal. August 10, 2015)......... 14

9

DCG Sys. v. Checkpoint Techs., LLC, 2012 U.S. Dist. LEXIS 172160

10

(N.D. Cal. April 16, 2012) ....................................................................................... 9

11

Finjan v. Proofpoint, 2015 U.S. Dist. LEXIS 169055 (N.D. Cal. December 16, 2015).........9, 11

12

Fr. Tele Telecom, S.A. v. Marvell Semiconductor, Inc., 2013 U.S. Dist. LEXIS 63823

13

(N.D. Cal. May 3, 2013) ......................................................................................... 15

14

Implicit Networks v. HP, 2011 U.S. Dist. LEXIS 100283 (N.D. Cal. September 7, 2011)....... 13

15

Infineon Techs v. Volterra Semiconductor, 2013 U.S. Dist. LEXIS 11279 ............................ 15

16

InterTrust Techs. Corp. v. Microsoft Corp., No. C 01-1640 SBA, 2003 WL 23120174

17

(N.D. Cal. December 1, 2003) ................................................................................. 10

18

Netlist Inc. v. Smart Storage Sys., 2014 U.S. Dist. LEXIS 45670

19

(N.D. Cal. April 1, 2014) ..................................................................................... 9, 15

20

Oracle Am., Inc. v. Google Inc., No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544

21

(N.D. Cal. September 26, 2011)................................................................................ 10

22

Orion IP v. Staples, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006) ...................................... 14

23

Vigilos v. Sling Media, 2012 U.S. Dist. LEXIS 189491 (N.D. Cal. July 12, 2012)................. 14

24

Word to Info Inc. v. Google Inc., No. 15-cv-03486-WHO, 2016 U.S. Dist. LEXIS 88928

25

(N.D. Cal. July 8, 2016)......................................................................................... 13

26

27

28

**Computerlaw Group LLP**
www.computerlaw.com℠

**Federal Rules of Civil Procedure**

Fed. R. Civ. Pro. 1 .................................................................................................................9, 10

**Local Patent Rules**

N.D. Cal. Local Patent Rules, Rule 3-1 ...............................................................................9, 15

N.D. Cal. Local Patent Rules, Rule 3-1(b) ...............................................................................5

N.D. Cal. Local Patent Rules, Rule 3-1(c)...............................................................................13

N.D. Cal. Local Patent Rules, Rule 3-1(d) ...............................................................................17

N.D. Cal. Local Patent Rules, Rule 3-2(a)...............................................................................17

N.D. Cal. Local Patent Rules, Rule 3-2(b) ...............................................................................18

N.D. Cal. Local Patent Rules, Rule 3-2(c)...............................................................................5

N.D. Cal. Local Patent Rules, Rule 3-2(d) ...............................................................................18

N.D. Cal. Local Patent Rules, Rule 3-2(e)...............................................................................18

**Computerlaw Group LLP**
www.computerlaw.com℠

1

## INTRODUCTION

2      May a sophisticated defendant who refuses to provide full disclosure of all its "smart"

3   device products, use this Court's Local Rules to argue that it cannot understand the Plaintiff's

4   infringement contentions?  Of course not, and particularly not when the evidence demonstrates

5   that Samsung knows full well every aspect of GeoVector's patented augmented reality

6   innovations that were first disclosed to Samsung years ago, and that are at the core of numerous

7   apps that run on its "smart" devices.  Instead of acknowledging that the infringement contentions

8   suffice, and that it has been notified of GeoVector's infringement contentions with the substantial

9   information already provided, Samsung seeks to needlessly burden GeoVector and the Court

10  with this motion.  In fact, the arguments on this motion are extreme: despite GeoVector's

11  multiple clear explanations of infringement, Samsung makes a blanket attack on each and every

12  one of the infringement contentions in this case.  Further, despite extended efforts to address

13  matters, Samsung has refused to resolve *even a single issue* and instead decided to go forward

14  with this motion in a transparent (and unfortunate) effort to paint Geovector negatively to the

15  Court in this case.  Why not simply cooperate and provide full disclosure of all its "smart"

16  devices so that there can be no doubts about infringement? Answer: Samsung has no doubts.

17

## STATEMENT OF FACTS

18      1.      The Ellenby family invented core augmented reality functionality in the early

19  1990s and thereafter.  They hold leadership roles at GeoVector Corporation ("GeoVector"), a

20  design and engineering firm.  Because of the uniquely innovative nature of their inventions, they

21  applied for and obtained patents and they trusted the Samsung Defendants ("Samsung") with

22  trade secret and confidential information that has still not been returned by Samsung.

23      2.      One consequence of the exponential growth of computing power and the dramatic

24  spread of digital technologies over the last two decades is that it is easy to forget a time when the

25  digital world we now take for granted did not exist.  In the early 1990s neither email nor the

26  internet were widely used (The World Wide Web launched in the 1990 – 1991 timeframe).  In

27  that environment, to anticipate that a mobile device would communicate with three GPS

28  satellites orbiting the Earth, and perform many additional calculations, to create augmented

Computerlaw Group LLP
www.computerlaw.com℠

1   reality required skill and vision.  GeoVector had those things, which is why it invented the core

2   principles of augmented reality.

3       3.      With exponentially greater computing power on mobile platforms, our lives have

4   now changed.  Over time, not only did digital innovations become widely used, viewing reality

5   in a digitally-enhanced (augmented) manner has become a priority for the technology industry.

6   It is part of a broader trend of digitizing reality in a way that previously seemed impossible

7   (Airbnb.com is a digital hotel, Skype is a digital video telephone carrier, Uber is a digital taxi

8   service, and most functions in life now have digital elements including filings with this Court).

9       4.      GeoVector was excited to have been at the forefront of this dramatic change in

10  how we live.  It sought to further spread – and profit from – its innovations.  In 2006 and 2008

11  GeoVector explained its innovations to Samsung and discussed opportunities for Samsung to

12  license those innovations.  GeoVector made multiple trips to Korea to explain those innovations

13  in person to Samsung and Samsung never contended to GeoVector that Samsung was an inventor

14  or that it otherwise was working on its own patent applications in the area of augmented reality.

15      5.      Exponential change continued.  The previously unthinkable augmented reality

16  world that GeoVector invented started to be widely adopted.  Because GeoVector invented core

17  augmented technology principles, those inventions were used by entire product families launched

18  by Samsung, including smartphones, tablets, phablets, and possibly more.  As a result, in April of

19  2013 GeoVector and Samsung continued their licensing discussions.  To help those discussions,

20  GeoVector hired an expert to prepare detailed charts outlining how Samsung devices infringe on

21  GeoVector's patents.  GeoVector sent those charts to Samsung, which had teams of people

22  review them carefully.  Those carefully prepared expert charts are the basis for GeoVector's

23  infringement contentions in this case.  They were a substantial building block upon which

24  GeoVector built the infringement contentions charts it produced to Samsung in this case that are

25  at the center of this Motion.

26      6.      GeoVector notified Samsung of its innovations, and of Samsung's infringement of

27  those innovations, at length.  At no point in time did Samsung engineers or business people

28  express that they were unclear, or not notified, nor did Samsung deny that it infringed on

*(left margin, rotated)* Computerlaw Group LLP
www.computerlaw.com℠

1  GeoVector's innovations.  It understood both the patents and the infringement, especially

2  considering it had the benefit of an expert analysis of how GeoVector's innovations were

3  specifically being infringed by Samsung's devices.  In fact, it understood GeoVector's

4  innovations so well that in December 2013 Samsung filed a patent application to patent the same

5  GeoVector innovations – without any advance disclosure to Geovector that it was doing so and

6  without any disclosure to the U.S. Patent Office.

7      7.      Because of Samsung's intentional disregard for GeoVector's rights, GeoVector

8  was forced to file this suit.  In its First Amended Complaint (with hundreds of pages of detail),

9  GeoVector extensively outlined its innovations and Samsung's infringement.  It included charts,

10  pictures, detailed descriptions, and much more.

11      8.      It also outlined the above facts in more detail.  On page two, line 18 of the First

12  Amended Complaint, GeoVector included a screenshot of the Layar application running on a

13  Samsung Galaxy device that obviously infringed on GeoVector's patents.  The screenshot shows

14  the device being held in Times Square pointing at One Times Square, a famous landmark

15  skyscraper.  The screen of the device also shows that same building with information overlaid on

16  the image.  To accomplish this, the device has to know which direction it is pointing in, where it

17  is physically located (*i.e.*, it precisely knows its latitude and longitude), what position it occupies

18  relative to the horizontal plane (*i.e.*, it is using information from an accelerometer), and with a

19  camera it must take a picture of that building.  As a result, it has the five essential elements of

20  GeoVector's innovations patented in its '936 patent: 1.a screen; 2. a camera; 3. processor capable

21  of handling numeric and graphic information; 4. a compass; and 5. an accelerometer.

22                        **PROCEDURAL HISTORY**

23      With a detailed First Amended Complaint that gives rise to this action, GeoVector again

24  notified Samsung at length of how it infringed on GeoVector's augmented reality innovations.

25  While Samsung extensively challenged that First Amended Complaint, it never stated nor

26  implied that it was the slightest bit unclear about what are GeoVector's contentions regarding

27  Samsung's infringement on GeoVector's patents.

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1    In fact, Samsung affirmatively asserted that it has been notified of GeoVector's

2    infringement contentions.  At the October 19, 2016 hearing on Samsung's motion to dismiss

3    GeoVector's First Amended Complaint, counsel for Samsung asserted: "The reason Samsung

4    didn't take a license and look at the technology, they don't make or use the technology that they

5    claim is patented. *A third party – if you look at the complaint very carefully, a third party makes*

6    *that application.* And so Samsung doesn't even use that technology itself."  Hearing Transcript at

7    page 10:19 – 24. (emphasis added).  Counsel for Samsung was referring to the Layar application

8    described above.  A copy of that transcript is attached to the Sargent Declaration (the "Sargent

9    Decl.") filed concurrently herewith as **Exhibit 1**.

10   In its Second Amended Complaint that is even more detailed, GeoVector again explained

11   in detail how Samsung has infringed its patents.  It again explained how the Layar application by

12   Samsung on Samsung's Galaxy phone and other "smart" devices infringed on GeoVector's

13   rights.  In that Second Amended Complaint GeoVector also went a step further than it had before

14   by adding three charts (one for each patent-in-suit) prepared by an expert that outline Samsung's

15   infringement of GeoVector's patents.  See Exhibit 16 to the Second Amended Complaint, which

16   is at Docket 42-1, page 255 and following.  Those charts had been sent to Samsung in 2013

17   during GeoVector's further exchanges and discussions with Samsung.

18   On November 2, 2016, GeoVector served over a hundred pages of detailed infringement

19   contentions, a number of which are attached to the Brann Declaration at Docket 46-1 (the

20   "Infringement Contentions").  Because of the extensive prior expert-level disclosure to Samsung

21   of GeoVector's infringement contentions, GeoVector had already carefully notified Samsung of

22   those contentions.

23   On page 1 of the Chart that is Exhibit A to the Infringement Contentions (hereinafter the

24   "Chart", which begins on page 15 of Docket 46-1, and which includes the three charts outlining

25   contentions for each of the three patents-in-suit), GeoVector listed the above-mentioned five

26   elements of an infringing device (*i.e.*, a screen, camera, processor, compass and accelerometer).

27   Among many other things, in the Chart GeoVector charted dozens of Samsung devices

28   containing those elements against GeoVector's claims.  See list of infringing devices on pages

1    two through eight of the Chart (which are at pages 16 to 22 of Docket 46-1) and the cross-

2    references to that list throughout the rest of the Chart.  GeoVector charted multiple infringing

3    devices against *each of its claims*.  See column 2 of the Chart entitled "Samsung Infringing

4    Devices (Patent LR 3-1(b)" at pages 15 to 51 of Docket 46-1.

5        GeoVector notified Samsung of its devices that infringe, and the location of infringement

6    on those devices, on an element-by-element basis. A table with the claims and check marks that

7    reflect the notice given to Samsung is attached to Sargent Decl. as **Exhibit 5**.

8        GeoVector also described one embodiment of Samsung's infringement called the Layar

9    application, which was provided by Samsung and made readily available by it; Geovector stated:

10    "The graphical user interfaces (GUIs) in the Layar and other applications, such as those listed in

11    Exhibit B, which come pre-loaded on the infringing devices, are the location of this limitation."

12    Page 9 of 37 of the Chart that is Exhibit A to the Infringement Contentions at Docket 46-1.

13        The detailed charts provided by GeoVector were more than sufficient to meet the

14    requirements of the Local Rules.  N.D. Cal. Local Patent Rules, Rule 3-2(c).

15        Experts at Samsung know and have known of GeoVector for decades and of the

16    widespread infringement across families of devices arising from the exponential growth of

17    digital technologies.  What once required unique expertise and vision in the early 1990s was now

18    something Samsung's counsel confidently and in an off-hand manner explained to the Court in

19    this case.   Engineers, business people and intellectual property experts at Samsung have not only

20    been notified – they understand GeoVector's innovations well – as is shown by Samsung's own

21    patent filings that copy substantially from confidential disclosures Geovector made.  In its

22    Second Amended Complaint at Docket 42 page 21:25 and following GeoVector explains in detail

23    how Samsung stole GeoVector's innovations by filing its U.S. Patent No. 9,245,185.

24        Despite the fact that GeoVector had once again explained the detailed elements to

25    Samsung in extensive Infringement Contentions, on November 15, 2016, Samsung sent a letter

26    attacking all of those contentions.  Samsung also refused to cooperate in an exchange process

27    where information within the control of Samsung is provided to Geovector.  Despite the charting

28    of dozens of Samsung "smart" devices against *each and every one* of its claims (see discussion

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1  above), on page 2 of that letter Samsung incorrectly asserted "for multiple claim elements

2  GeoVector does not chart even a single specific product against these limitations."  Docket 46-3,

3  page 3.  Samsung also made seven demands that GeoVector produce additional documents or

4  information within one or three days.  See Exhibit 3 to the Brann Decl. at pages 5 and 6 of

5  Docket 46-3.

6          GeoVector was puzzled.  Nevertheless, after November 15, 2016, GeoVector worked to

7  find time in the schedules of its client, its experts, and its attorneys.  GeoVector also held

8  discussions with Samsung about changing the overall schedule of the case through a stipulation.

9  With the Thanksgiving holidays then arriving, there were only ten business days in the month of

10  November following November 15; importantly, at no point during those discussions did

11  Samsung mention how this motion fit into its overall timing calculation of matters in this case.

12  Without any provision of any product information by Samsung nor any cooperation in process,

13  Samsung elected to work on and file this motion with no real "meet and confer" process between

14  GeoVector's representatives and any representatives of Samsung.

15          On December 9, 2016, GeoVector sought to continue its case management and

16  scheduling discussions with Samsung by calling Samsung's counsel.  When GeoVector could not

17  get in touch with Samsung's counsel, on that day it sent the letter attached as **Exhibit 2** to the

18  Sargent Decl.  Among other things, in that letter GeoVector asked Samsung to have a good faith

19  discussion about the infringement contentions and reschedule this Motion to a future date to

20  allow for such a discussion.  If the parties were able to resolve matters through a discussion, then

21  the motion would not be necessary.

22          In the negotiations about case management timing, Samsung wanted extensions to its

23  deadlines to serve invalidity contentions and to file a motion to dismiss certain allegations in

24  GeoVector's Second Amended Complaint.  However, Samsung refused to also extend timing

25  relating to its Motion to Strike Infringement Contentions.  As a result, the parties submitted a

26  Stipulation to Extend Time, which the court entered on December 14, 2016 at Docket 48.

27

28

1    On December 15, 2016 Samsung and GeoVector held a telephone conference to discuss

2    GeoVector's Infringement Contentions.  In a letter of December 19, 2016, GeoVector

3    documented that discussion.  Among other things, GeoVector noted,

4         In our December 15, 2016 conference call Samsung again affirmed that it
5    has been extensively notified of GeoVector's infringement claims. Samsung did
     so by affirming its understanding that apps running on its devices infringe on
6    GeoVector's innovations. This is the same assertion that Samsung made at the
     October 19, 2016 hearing on Samsung's motion to dismiss. There Samsung
7    asserted: "The reason Samsung didn't take a license and look at the technology,
     they don't make or use the technology that they claim is patented. *A third party –*
8    *if you look at the complaint very carefully, a third party makes that application.*
     And so Samsung doesn't even use that technology itself." Transcript at pg. 10:19
9    – 24. (emphasis added)

10        In our conference call GeoVector reminded Samsung that those third-party
11   developers are not random strangers unknown to Samsung who are engaging in
     activity that is strange or prohibited by Samsung. Very much the opposite is true:
12   Samsung has specifically equipped its devices so that those app developers can
     create infringing apps. A key selling point of Samsung's phones and tablets are
13   exactly the existence of those apps. Customers primarily purchase phones and
     tablets so that they can install apps. Samsung encourages those developers to
14   make those apps. They are a critical part of its ecosystem. In our call, Samsung
15   provided no information to the contrary.

16        Samsung's teams have carefully looked at GeoVector's innovations, they
17   understand what the innovations are, and they know who has used those
     innovations without a GeoVector license. Samsung has therefore been fully
18   notified.

19        In our conference call, we walked through the basic elements of
20   GeoVector's augmented reality innovations. We reminded Samsung of the careful
     notice of infringement given to Samsung on page 1 of the chart in GeoVector's
21   infringement contentions that succinctly asserts, "Samsung's smart phones have
     infringed on GeoVector's patents. As used herein, 'smartphones' includes devices
22   that have a 1. Screen; 2. Camera; 3. Processor capable of handling numeric and
     graphic information; 4. A compass; and 5. An accelerometer."
23

24        GeoVector indicated that the above description of its infringement
     contentions is tailored to this specific case and was not copied from a boilerplate
25   generic statement. Samsung made no effort to establish that those tailored
     infringement contentions in fact have a generic source.  GeoVector gave Samsung
26   every opportunity in our conference call to explain itself. As a result, Samsung's
     assertion that GeoVector's infringement contentions are not valid because they
27   are generic has no basis.

28

Computerlaw Group LLP
www.computerlaw.com℠

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

When GeoVector proffered on the call the fact that Samsung does in fact know what GeoVector's infringement contentions are, Samsung responded by avoiding the issue. Samsung asserted its position that there is a long list of other issues in the case.

The legal standard here is to provide Samsung with notice of GeoVector's infringement contentions. That standard has been met, and Samsung does not need any more information to be fully notified of GeoVector's infringement contentions as required by the law.

In that fourteen-page letter GeoVector documented numerous additional matters that were discussed on the telephone conference that GeoVector believed were resolved.  Those matters are outlined in more detail below. A copy of that December 19, 2016 letter is attached to the Sargent Decl. as **Exhibit 3**.

To help move the discussion along, GeoVector also outlined applicable legal standards in detail.

On December 20, 2016, Samsung responded to that letter by indicating "…GeoVector appears determined… to improperly shift the burden of producing adequate infringement contentions to Samsung by speculating on what Samsung knows or would be able to understand from the contentions."  December 20, 2016 letter from Ms. Brann to Mr. Sargent attached to the Sargent Decl. as **Exhibit 4**. What Samsung describes is not an improper shifting of the burden. What Samsung describes is the main point of this exercise: determining whether GeoVector has reasonably notified Samsung of its infringement contentions.

Samsung does not have to speculate about what it knows or would be able to understand from the contentions.  It clearly *does know* exactly what GeoVector contends.

Samsung's knowledge of GeoVector's infringement contentions is confirmed by its stance: it refused to confirm that anything had been resolved.  <u>See</u> letter of December 20, 2016 from Ms. Brann to Mr. Sargent attached to the Sargent Decl. as **Exhibit 4**.  Samsung's total unwillingness to resolve even a single issue establishes that, had GeoVector spent more time discussing this with Samsung and had GeoVector provided Samsung with even more details, we would be exactly in this same place.

//

//

1

**LEGAL STANDARD**

2     "The [local Patent Rule's] purpose is to provide notice of the patentee's theory of

3     infringement, not to provide the evidence supporting that theory."  Finjan v. Proofpoint, 2015

4     U.S. Dist. LEXIS 169055 (N.D. Cal. December 16, 2015) at *8-9.

5     "Rule 3-1 'does *not* require Plaintiff to reverse engineer every product it has accused…'"

6     Netlist Inc. v. Smart Storage Sys., 2014 U.S. Dist. LEXIS 45670 at *8 (N.D. Cal. April 1, 2014).

7     (emphasis in original).  A plaintiff "…need not disclose specific evidence, let alone 'establish'

8     that the patent applications and diagrams are representative of the [accused device], to satisfy

9     Rule 3-1."  Id. at *10 and *11.  "[T]here is no *per se* rule that prohibits a patentee from using

10    phrases such as 'discovery will likely show,' especially where detailed product information, and

11    the accused product itself, are not reasonably available to the patentee."  Id. at *13.

12    Rule 3-1 does not, "as is sometimes misunderstood, require the disclosure of specific

13    evidence nor do[es it] require a plaintiff to prove its infringement case."  DCG Sys. v.

14    Checkpoint Techs., LLC, 2012 U.S. Dist. LEXIS 172160, (N.D. Cal. April 16, 2012), at *2

15    (internal quotation marks omitted).  The foregoing provisions combined with Rule 1 of the

16    Federal Rules of Civil Procedure require a cooperative process "to secure the just, speedy, and

17    inexpensive determination of every action and proceeding."

18

**ARGUMENT**

19    I.    **GEOVECTOR HAS REASONABLY IDENTIFIED THE ACCUSED INSTRUMENTALITIES.**

20    GeoVector identifies with reasonable specificity the characteristics of accused

21    instrumentalities on page 1 of the Chart that is Exhibit A to its Infringement Contentions, and

22    then lists those instrumentalities starting on page 2 and going through to page 8 of that Chart

23    (which starts on page 15 of Docket 46-1).  Those are the infringing "smart" devices that

24    GeoVector is aware of at this time, and GeoVector reserves the right to add more devices.  As a

25    result, no additional information is required from GeoVector on this point.

26    However, in the interest of resolving matters with Samsung without the assistance of the

27    Court, in the December 15, 2016 conference GeoVector offered to repackage that list into

28    another stand-alone list that is more simple.  Samsung's response to this offer was "That would

Computerlaw Group LLP
www.computerlaw.com℠

1    be great."  As a result, GeoVector then enclosed such list with its December 19, 2016, letter to

2    Samsung that is attached to the Sargent Decl. as **Exhibit 3**.  This more than resolved the issue of

3    instrumentalities.

4           In its December 20, 2016 letter attached to the Sargent Decl. as **Exhibit 4** it incorrectly

5    indicated,

6           Samsung did not represent that merely re-packaging a portion of GeoVector's
     infringement contentions into a stand-alone list of products GeoVector is "aware
7    of at this time" would resolve the deficiencies in GeoVector's contentions.
     Instead, as stated in our letter of December 16th, and as we made clear on the call,
8    we merely agreed that if GeoVector were to provide a complete list of accused
     Samsung products by name or model number, that would help resolve the parties'
9    dispute.

10          Samsung's approach, which drives up the cost of this process, runs counter to the

11   overriding principle of the Patent Local Rules, which is to "make the parties more efficient, to

12   streamline the litigation process…"  InterTrust Techs. Corp. v. Microsoft Corp., No. C 01-1640

13   SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003).  The Federal Rules of Civil Procedure

14   have the same purpose: "to secure the just, speedy, and inexpensive determination of every

15   action and proceeding."

16          A more cumbersome approach that primarily serves to expend resources of a party with

17   less resources than Samsung is not required by applicable law.  For example, the Oracle Am.,

18   Inc. v. Google Inc., No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544 (N.D. Cal. September

19   26, 2011), cited by Samsung, has been distinguished by Adobe v. Wowza, 2014 U.S. Dist. LEXIS

20   23153 (N.D. Cal. February 22, 2014). At footnote 8 the Court indicated the following regarding

21   the Oracle decision: "That case holds that a party asserting infringement is not required to list in

22   its contentions every 'item of proof' supporting a particular theory of infringement if that party

23   adequately disclosed that theory of infringement." Id. The Adobe Court further noted:

24          The Court concludes that the first theory at issue was adequately disclosed in the
     infringement contentions, because they identify the MediaReader functionality as
25   meeting the queues limitations of the '658 patent. See Irwin Decl., Ex. K, A-1 at
     8-9, 30-31. Because Adobe adequately disclosed this theory, Adobe was not
26   required to list every bit of WMS source code that supports it. See Oracle Am.,
     Inc. v. Google, Inc., Case No. 10-3561, 2011 U.S. Dist. LEXIS 109544, 2011 WL
27   4479305, at *3 (N.D. Cal. Sept. 26, 2011) (holding that a party that adequately

28

Computerlaw Group LLP
www.computerlaw.com℠

1

discloses a theory of infringement is not required to list in its contentions every "item of proof" that supports that theory).

Id. at 56.

The court in <u>Finjan v. Proofpoint</u> 2015 U.S. Dist. LEXIS 169055 (N.D. Cal. December 16, 2015) at *8 approvingly cited the above <u>Adobe</u> case.  The Court noted that "The [local Patent Rule's] purpose is to provide notice of the patentee's theory of infringement, not to provide the evidence supporting that theory."  <u>Id.</u> at *8-9.  As is noted in GeoVector's Second Amended Complaint, in 2013, GeoVector gave Samsung a detailed claim-by-claim analysis of Samsung's infringement.  Samsung asserted that it had teams of people reviewing that analysis, and at no point did it assert it was not notified of GeoVector's contentions.  It knows them well, with the benefit of an expert level of analysis.

In the December 15, 2016 conference Samsung demonstrated its understanding of GeoVector's claims through apps running on its devices that infringe on GeoVector's innovations.  This is the same assertion that Samsung made at the October 19, 2016 hearing on Samsung's motion to dismiss.  There Samsung asserted: "The reason Samsung didn't take a license and look at the technology, they don't make or use the technology that they claim is patented. *A third party -- if you look at the complaint very carefully, a third party makes that application.* And so Samsung doesn't even use that technology itself."  Transcript at pg. 10:19 – 24. (emphasis added)

In that conference GeoVector reminded Samsung that those third-party developers are not random strangers unknown to Samsung who are engaging in activity that is strange or prohibited by Samsung.  The opposite is true: Samsung has specifically equipped its devices so that those app developers can create infringing apps.  A key selling point of Samsung's phones is the existence of those apps.  Customers primarily purchase phones <u>so that they can install apps</u>. Samsung encourages those developers to make those apps.  They are a critical part of its ecosystem.  Samsung has never provided information to the contrary, nor has it given any reasonable explanation of how it has not been notified of how those apps clearly infringe.

**Computerlaw Group LLP**
www.computerlaw.com℠

1    Samsung's teams have carefully looked at GeoVector's innovations, they understand

2    what the innovations are, and they know who has used those innovations without a GeoVector

3    license.  Samsung has therefore been fully notified.

4    In the December 15, 2016 conference GeoVector again walked Samsung through the

5    basic elements of GeoVector's augmented reality innovations.  GeoVector reminded Samsung of

6    the notice of infringement given to Samsung on page 1 of the chart in GeoVector's infringement

7    contentions that succinctly asserts, "Samsung's smart phones have infringed on GeoVector's

8    patents. As used herein, 'smartphones' includes devices that have a 1. Screen; 2. Camera; 3.

9    Processor capable of handling numeric and graphic information; 4. A compass; and 5. An

10   accelerometer."

11   GeoVector indicated that the above description of its infringement contentions is tailored

12   to this specific case and was not copied from a boilerplate generic statement.  Samsung made no

13   effort to establish that those tailored infringement contentions in fact have a generic source.

14   GeoVector gave Samsung every opportunity in the conference to explain itself.  As a result,

15   Samsung's assertion that GeoVector's infringement contentions are not valid because they are

16   generic has no basis.

17   When GeoVector proffered in the conference the fact that Samsung does in fact know

18   what GeoVector's infringement contentions are, Samsung responded by avoiding the issue.

19   Samsung asserted its position that there are a long list of other issues in the case.

20   The legal standard here is to provide Samsung with notice of GeoVector's infringement

21   contentions.  That standard has been met, and Samsung does not need any more information to

22   be fully notified of GeoVector's infringement contentions as required by the law.

23   Because Samsung is well-aware of which of its devices contain GeoVector's innovations,

24   GeoVector has propounded discovery requests on Samsung to obtain additional information in

25   this respect.  If Samsung provides GeoVector with added information about each Samsung smart

26   device with any GPS system embedded in it, including all the product information relating to

27   those devices, GeoVector will provide more detail in answers to interrogatories or other

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1   responses to discovery.  GeoVector outlined to Samsung its position in this regard in its

2   December 19, 2016, letter.

3   **II.    BECAUSE GEOVECTOR CHARTED DOZENS OF INFRINGING INSTRUMENTALITIES, AND BECAUSE SAMSUNG IS FULLY ON NOTICE, ADDITIONAL CHARTS ARE NOT REQUIRED.**

4   As the Local Rule quoted by Samsung notes, "a chart" is required.  It does not require

5   "multiple charts."  Specifically, Patent Local Rule 3-1(c) requires "*A chart* identifying

6   specifically where each limitation of each asserted claim is found within each Accused

7   Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. §

8   112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that

9   performs the claimed function."  (emphasis added)

10  GeoVector has produced "a chart" with the required information.  Asking for the

11  formalism of multiple charts is neither required nor helpful in this action given the substantial

12  similarity among the Samsung devices, particularly with respect to the patented technology at-

13  issue.

14  Case law does not support the added expense of going through the formalism of creating

15  multiple charts.  In <u>Word to Info Inc. v. Google Inc.</u>, No. 15-cv-03486-WHO, 2016 U.S. Dist.

16  LEXIS 88928, (N.D. Cal. July 8, 2016) the Hon. Orrick noted that "reasonable notice" was the

17  issue in that case.  The Court noted at page 18:

18

19          Google's principal argument against amendment is that WTI's amended
            infringement contentions fail to provide reasonable notice of WTI's
20          infringement theories, and that Google would be prejudiced by
            amendment as a result…   The problem with this argument is that Google's
21          actual critique of WTI's amended infringement contentions is not so much
            that the contentions are unclear, but that they lack merit and include
22          alternative infringement theories.

23  As is outlined above, GeoVector has provided Samsung with reasonable notice.

24  Cases have not required separate claim charts for each infringing product, as long as the

25  products infringe in "essentially the same way."  <u>See</u> <u>Implicit Networks v. HP</u>, 2011 U.S. Dist.

26  LEXIS 100283 (N.D. Cal. September 7, 2011), *5, where the plaintiff was accused of attempting

27  to "shoehorn over 120 different products at issue into one chart for each patent, as if all of the

28  products are identical…"  The Court rejected that argument.  <u>Id</u>.  The Court approvingly noted

1    that the plaintiff "identifies the infringing products by category on a claim by claim basis." Id. at

2    *7.  Plaintiff indicated it had "grouped the products specifically identified in [an appendix]

3    together because the products identified function in essentially the same way and, therefore,

4    infringe each claim in essentially the same way." Id.

5         The Court in Vigilos v. Sling Media, 2012 U.S. Dist. LEXIS 189491 (N.D. Cal. July 12,

6    2012) approvingly cited to Orion IP v. Staples, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006), where

7    the Court noted "Plainitiffs should provide specific theories of infringement and *representative*

8    *examples* of the alleged infringement so as to give defendants fair notice of the infringement…"

9    Id. at *15 (emphasis added).  The Court also noted that "representative claim charts" may be

10   used in certain cases where plaintiff meets its burden establishing that such charts are

11   appropriate.

12        The Court in CAP Co. v. McAfee, Inc., 2015 U.S. Dist. LEXIS 104697 (N.D. Cal. Aug.

13   10, 2015), noted that representative products are acceptable as long as they share all critical

14   characteristics.  The Court noted, "representative products may only be charted 'when supported

15   by adequate analysis showing that the accused products share the same critical characteristics.'"

16   Id. at *5-6.

17        The infringing devices in this case fall squarely within the line of cases in which

18   representative products have been allowed.  GeoVector has given Samsung ample notice because

19   it has provided a list 8 pages long of such products and has offered to give more detail if

20   Samsung provides information about its devices.

21        In the parties' December 15, 2016, conference GeoVector also explained at length why its

22   augmented reality innovations work in the same way across all the accused devices.  GeoVector

23   used the example of an accelerometer, which allows devices to understand their position relative

24   to the horizontal plane.  GeoVector reminded Samsung that an infringing device must have an

25   accelerometer to know that the device is being tilted, and adjust the images on its screen

26   accordingly to infringe on GeoVector's augmented reality innovations.  Counsel for GeoVector

27   asserted not only that the existence of an accelerometer is a common element across all

28   infringing devices, counsel also indicated they did not know how this could be done differently.

Computerlaw Group LLP
www.computerlaw.com℠

1    Samsung confirmed GeoVector's understanding because Samsung had no explanation of

2    how a device could otherwise understand that its position was changing relative to the horizontal

3    plane.  Samsung had no other facts to establish that the list of devices GeoVector has already

4    provided Samsung operate in a different manner from the infringing manner that GeoVector has

5    carefully described.  As a result, Samsung's assertions that the devices are all "very different"

6    has no basis.

7    **III.    ABSENT FURTHER DISCLOSURES AND COOPERATION FROM SAMSUNG, THERE**
         **IS NO BASIS TO REQUIRE MORE DETAIL; NONE IS REQUIRED TO GIVE NOTICE.**

8

9    Because GeoVector has fully notified Samsung, the law does not require additional detail.

10   Samsung's arguments for additional detail are inapplicable.  For example, "Rule 3-1 'does

11   *not* require Plaintiff to reverse engineer every product it has accused…'"  Netlist Inc. v. Smart

12   Storage Sys. 2014 U.S. Dist. LEXIS 45670 at *8 (N.D. Cal. April 1, 2014). (emphasis in

13   original) Other cases are in accord.  In Fr. Telecom, S.A. v. Marvell Semiconductor, Inc., 2013

14   U.S. Dist. LEXIS 63823 (N.D. Cal. May 3, 2013) the Court noted, "The [Local Patent Rule] does

15   not require [the Plaintiff] to reverse engineer every product it has accused."  The Court cited

16   Bender v. Freescale Semiconductor, Inc., 09-cv-01156 PHJ (MEJ), 2010 U.S. Dist. LEXIS

17   91281, 2010 WL 1689465, *4 (N.D. Cal. Apr. 26, 2010) noting that the Court there held that

18   reverse engineering is not a *per se* requirement.  Id. at *9.

19   The Infineon Court only required reverse engineering in that case because it was unclear

20   about what the patent infringement claim in that case consisted of.  There were various layers in

21   question in that case, and the Court didn't know which layers were allegedly infringing the

22   patent in question.  See Infineon Techs v. Volterra Semiconductor, 2013 U.S. Dist. LEXIS 11279

23   at *11-13.  The Court noted, "…it is unclear which metal layer or combination of layers qualifies

24   as the respective metal conductors."  Id. at *13.  Thus, clarity is what was required from the

25   plaintiff in that case.  Going back to at least 2013, Samsung has been clear on GeoVector's

26   assertions of infringement.

27   //

28   //

Computerlaw Group LLP
www.computerlaw.com℠

The <u>Fr. Telecom</u> Court noted that a plaintiff's preparation of infringement contentions can be hindered when the defendant has the information, or when it is not publicly available.  <u>Fr. Telecom</u>, 2013 U.S. Dist. LEXIS 63823, *11-12. The Court noted:

-"there are times when plaintiffs' preparation is restricted by defendants' sole possession of the information plaintiffs need."

-the plaintiff must identify how defendants' products infringe, "*with the information currently available to it*." (emphasis in original)

-"technical documentation and reference designs…are not publicly available…. [the defendant] refused to provide a single chip, specification, or other information from which [plaintiff] could do a direct comparison to the [patent in question]."

Again, when Samsung provides GeoVector with added information about each Samsung smart device with any GPS system embedded in it, including all the product information relating to those devices, GeoVector will provide more detail in the future.

## IV.   GEOVECTOR PROVIDED A SUFFICIENT SAMPLE OF ACCUSED DEVICES.

GeoVector lists multiple infringing devices in the Chart and cross references those devices throughout the Chart.  GeoVector has therefore charted all those devices.  Samsung's assertion that "GeoVector does not chart even a single specific product against these limitations" (in Samsung's November 15, 2016 letter at Docket 46-3, page 3) is squarely contradicted by the long list of charted products that begins on page 1 of GeoVector's Chart (which is page 15 of Docket 46-1).  Samsung's statements about the Chart are therefore not accurate.  There are specific cross references in the Chart to the list of infringing devices, not generic references to "infringing devices."  As is discussed above, neither in its motion or in any conference did Samsung have information to support its assertion that GeoVector's carefully tailored assertions are instead generic.

In two discreet places the Chart references "industry standards" to explain the location of the infringement.  Referencing "industry standards" gives more detail and does not represent a "complete lack of detail" as Samsung asserts.

Computerlaw Group LLP
www.computerlaw.com℠

**V.   THE CONTENTION PROCESS IS NOT APPROPRIATE FOR ASSERTING DEFENSE ARGUMENTS AND THE INFRINGEMENT CONTENTIONS PROVIDED <u>REASONABLE NOTICE OF INDIRECT INFRINGEMENT; SAMSUNG ADMITS TO THE SAME.</u>**

As is outlined above, Samsung is on notice of the fact that its devices provide an augmented reality platform for app developers and users of those apps, and admits to those facts. That reality is not "conclusory" or unclear in the slightest. Samsung's counsel could even explain that fact in the above-mentioned hearing. Samsung is on notice and, in this interconnected world with smartphones that help people connect, it only stands to reason that apps on such devices enable indirect infringement.

While no additional information is required, GeoVector has made an additional effort to resolve matters by offering to Samsung to add cross references in its chart to Patent Rule 3-1(d). As a result, this issue should be resolved. Samsung has unfortunately made a blanket refusal to resolve any matter and has persisted in maintaining its motion.

**VI.   WHEN SAMSUNG PROVIDES FURTHER INFORMATION, GEOVECTOR WILL <u>FURTHER CLARIFY ITS DOCTRINE OF EQUIVALENTS CONTENTIONS, IF NECESSARY.</u>**

If Samsung provides GeoVector with added information about each Samsung smart device with any GPS system embedded in it, including all the product information relating to those devices, GeoVector will provide more detail in answers to interrogatories or other responses to discovery. GeoVector has provided all the required information it has at this time in this regard to Samsung.

**VII.   <u>GEOVECTOR HAS PRODUCED ALL REQUIRED DOCUMENTS.</u>**

GeoVector has produced all the responsive documents required at this juncture, has confirmed that fact with Samsung, and has asked Samsung to drop its motion as a result. Samsung has unfortunately refused to resolve any issues with GeoVector. No legal authority – and certainly none of the authorities cited by Samsung – requires GeoVector to create documents. As a result, if it has produced all of the documents that are required at this time, there is no basis for compelling a further production. There are no documents to compel.

//

//

//

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

### A.   GeoVector Has Met Its Obligation to Produce Documents Regarding Pre-Patent Application Discussions Under P.R. 3-2(a).

In addition to complying with its obligation to produce documents under P.R. 3-2(a), GeoVector is looking at specific issues Samsung has raised in connection with that rule and, if it locates additional documents relating to those specific issues, it will produce them.  GeoVector informed Samsung of this solution in its December 15 conference with Samsung, and then confirmed it in its December 19, 2016 letter that is attached to the Sargent Decl. as **Exhibit 3**.

### B.   GeoVector Produced All Documents Regarding the Reduction To Practice of its Inventions Under Patent Local Rule 3-2(b).

GeoVector simply does not have additional documents that are responsive to Patent Local Rule 3-2(b).  GeoVector has also made clear to Samsung that its assertion that there is an undated document that GeoVector has produced does not mean there are additional documents.  No logical connection exists between the absence of a date and the issue of whether additional documents exist.  Therefore, no basis for a motion exists on this point.

GeoVector has made these points to Samsung, which it also confirmed in its December 19, 2016 letter that is attached to the Sargent Decl. as **Exhibit 3**.  GeoVector asked Samsung to drop its motion as a result.

### C.   GeoVector Has Produced the File Histories and Ownership Documents.

GeoVector has made clear to Samsung that it has produced the file histories under Local Patent Rule 3-2(c) and documents evidencing ownership under Patent Local Rule 3-2(d).  Therefore, no basis for a motion exists for this point.  GeoVector informed Samsung of this solution in its December 15 conference with Samsung, and then confirmed it in its December 19, 2016 letter that is attached to the Sargent Decl. as **Exhibit 3**.

### D.   GeoVector has Produced Documents Showing the Operation of Instrumentalities.

GeoVector has made clear to Samsung that it has produced the requisite documents that show the operation of instrumentalities under Local Patent Rule 3-2(e).  In fact, GeoVector went above and beyond its obligation to provide documents and has indicated to Samsung that YouTube videos may help it understand how the instrumentalities work.  GeoVector further

1  provided to Samsung this link to such a video:

2  https://www.youtube.com/watch?v=qMuM02gWkjI

3      Therefore, no basis for a motion exists and GeoVector has also asked Samsung to drop its

4  motion.

5  **VIII.   SAMSUNG IS FULLY ABLE TO PREPARE AND SUPPLY INVALIDITY CONTENTIONS.**

6      Because GeoVector engaged in detailed licensing discussions with Samsung about

7  GeoVector's inventions – and expert analysis of the GeoVector's infringement contentions

8  specifically – the level of detail required for Samsung to be placed on notice of GeoVector's

9  infringement contentions was met by GeoVector long ago.  While the need for notice is minimal

10  under these circumstances, for reasons outlined above, GeoVector has nonetheless provided

11  Samsung with detailed, tailored, and extensive notice.  Samsung provides no legal support for its

12  conclusory assertion that it has been impeded from being able to assert invalidity contentions.

13                                  **CONCLUSION**

14      While Samsung asserts formalisms in an effort to avoid the central issues of this case,

15  GeoVector's contentions meet the applicable standards and put Samsung on notice of its

16  contentions.  The carefully laid out case in GeoVector's Second Amended Complaint that is

17  hundreds of pages long, and the hundred-page-long infringement contentions GeoVector already

18  served, are complete. With the additional supplements GeoVector has provided Samsung, any

19  remaining issues have been fully resolved.  As a result, the Court should deny Samsung's

20  motion.

21

22  Dated: December 21, 2016                    Respectfully submitted,
                                               COMPUTERLAW GROUP LLP
23

24                                   By:   */s/ Christopher Sargent*
                                           Jack Russo
25                                         Christopher Sargent

26                                         Attorneys for Plaintiff
                                           GEOVECTOR CORPORATION
27

28

Computerlaw Group LLP
www.computerlaw.com℠